1
2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

3

RANDALL MARQUISE EMBRY ,

4

Petitioner,

5

v.

6

STEPHEN SINCLAIR ,

Respondent.

7

Case No. 3:14-cv-05360-BHS-TLF

REPORT AND
RECOMMENDATION

Noted for **January 22, 2021**

8        This matter comes before the Court on petitioner Randall Marquise Embry's

9    petition for writ of *habeas corpus* under 28 U.S.C. § 2254, challenging the legality of his

10    convictions for the crimes of attempted murder in the first-degree, with a firearm

11    enhancement, unlawful possession of a firearm in the first-degree, and conspiracy to

12    commit murder in the first degree. Dkt. 52, Ex. 1, Judgment and Sentence, *State v.*

13    *Embry*, Pierce County Cause No. 09-1-01458-4, Ex. 2, Motion and Order Correcting

14    Judgment and Sentence, *State v. Embry*, Pierce County Cause No. 09-1-01458-4.

15        Mr. Embry presents four grounds for relief: (1) the trial court erred by admitting

16    prejudicial gang evidence after "ex parte" contact with the prosecutor where no "real

17    evidence" was admitted to change prior rulings disallowing such evidence; (2) the trial

18    court erred in joining, in one trial, the conspiracy charge against Mr. Embry and

19    consolidating his trial with his co-defendants; (3) the state submitted insufficient

20    evidence of conspiracy to commit murder; and (4) the trial court erred in sentencing Mr.

21    Embry for a firearm enhancement which was not found by the jury. Dkts. 9, 9-1, 9-2. Mr.

22    Embry also requests an evidentiary hearing. Dkt. 9, at 21. For the reasons set forth

23    below, the request for an evidentiary hearing should be DENIED and the petition should

24
25

REPORT AND RECOMMENDATION - 1

be DISMISSED. Also, for the reasons set forth below, the undersigned recommends

that issuance of the certificate of appealability (COA) be DENIED.

BACKGROUND

I.  Statement of Facts

The Washington Court of Appeals summarized the facts relevant to this matter in

the context of Mr. Embry's direct appeal as follows:

> In the early morning of New Year's Day 2009, at the 54th
> Street Bar and Grill in Tacoma, a fight broke out between Andre
> Parker and Michael Nelson, Tyrick Clark's friend. Clark and
> another friend, "Cornelius," observed the fight; and, according to
> Clark, Parker swung at Cornelius. Clark then retaliated, hitting
> Parker in the mouth. Parker was a member of the Hilltop Crips, a
> Tacoma street gang; Clark was a member of the Young Gangster
> Crips (YGC).
> On February 23, 2009, Clark and Nicole Crimmins went to
> McCabe's, a Tacoma nightclub. Clark saw Parker at McCabe's
> that night, and although he did not interact with Parker that night,
> Clark's impression was that the two had not resolved their issues
> stemming from their New Year's morning fight.[1] Curtis Hudson, a
> McCabe's patron, confirmed that he understood Parker and Clark
> had a "beef" with one another stemming from their earlier fight. 6
> Verbatim Report of Proceedings (VRP) at 908.
> Embry and Morgan, two Hoover Crip gang members, also
> visited McCabe's that night. Clark did not know Embry or Morgan.
> While at McCabe's, Clark visited with an acquaintance about the
> New Year's morning fight with Parker, and Embry briefly
> approached and tried to interject himself into Clark's conversation.
> Later that night, as he descended a McCabe's stairwell, Clark
> inadvertently kicked Embry's shoe as Embry visited on the stairs
> with Morgan.
> Just before closing, Clark and Crimmins left McCabe's and
> walked toward their vehicle, which was parked along an adjacent
> street. As they neared their vehicle, a man wearing a hooded
> sweatshirt-- later identified by Crimmins and Clark as Embry—
> approached them from behind another car parked along the same
> street. As Clark and Crimmins were about to pass Embry, Embry
> pulled out a gun and shot Clark several times. As Clark fell to the
> ground, Embry went to a nearby car. Embry entered the car's

---

[1] [Footnote by Court of Appeals] Clark's testimony is ambiguous. He said, "[T]he impression I was under the only person I was still mad at was Mr.- was [Parker]." 4 Verbatim Report of Proceedings (VRP) at 602.

backseat. Crimmins followed Embry, called 911, and relayed the car's description and license plate number to the dispatcher.

As Embry departed, off-duty Tacoma police officers Scott Stanley and David Fischer, both moonlighting at McCabe's, arrived at the scene.[2] An emotional Crimmins initially told the officers that the shooter got into a white Caprice with license plate number 698–YNT. After she calmed down, she described the car as a "silver Ford Escort-type vehicle." 2 VRP at 268.

Other witnesses also heard the gunshots. Telon Walker, Clark's cousin, was standing outside McCabe's when he heard the gunshots. He turned toward the gunshots, saw Crimmins and a body on the ground, and ran in that direction. Walker witnessed a 2006 to 2008 four-door "grayish, light mauve, tan color" Impala drive away from the scene. 5 VRP at 768. Before the car departed, he saw two men get into the car: one wearing a red hooded sweatshirt climbed into the rear, passenger side, and one wearing a dark hooded sweatshirt climbed into the rear, driver side. Walker added that earlier he had seen Morgan wearing the red hooded sweatshirt at McCabe's. Following the gunshots, Hudson witnessed a man in a "red sweatshirt, hoody sweatshirt" running away from the shooting. 6 VRP at 913. He recognized the red sweatshirt as that which Morgan wore that evening. Manuel Hernandez also turned toward the gunfire immediately after hearing shots. He saw a man with a "five-point star" tattoo on his neck,[3] Embry, running from the shooting scene with another man. 6 VRP at 974. Embry carried a gun in his right hand.

Security Video Footage

McCabe's surveillance cameras partially captured the events in and around McCabe's. At 11:36 p.m. Embry entered McCabe's. Shortly after midnight, Morgan and Parker entered together. Parker wore a gray, blue, and white jacket with a hood; blue jeans; and white shoes. Morgan wore a red hooded sweatshirt. Embry wore a black and white hooded sweatshirt. and a Houston Astros baseball cap. Video footage depicts Parker, Embry, and Morgan interacting with each other, as well as with others. Between 1:48 and 1:52 a.m., the three left McCabe's and visited in front of McCabe's. Clark exited the club at 1:51 a.m.

Embry and Morgan then jogged out of the picture toward Clark's parked van. Parker followed, walking in the same general direction. Then, at 1:53 a.m., Clark and Crimmins walked together in that same direction toward Clark's vehicle. Almost two minutes after Clark and Crimmins left, walking toward their vehicle, everyone in front of McCabe's turned their heads toward the

[2] [Footnote by Court of Appeals] Officer Stanley estimated that it took just 15 seconds, from the time he heard gunfire, to arrive at the shooting scene.

[3] [Footnote by Court of Appeals] Hernandez described the tattoo as a "[f]ive-point star with 'H' in it." 6 VRP at 975. Tacoma Police Detective John Ringer testified that both Hilltop Crips and Hoover Crips wear this symbol described as the Houston Astros logo.

REPORT AND RECOMMENDATION - 3

1    direction that Parker, Embry, Morgan, Crimmins, and Clark had all
gone. The cameras did not capture the shooting.

2

### Stolen Vehicle Report

3        Within seconds of the shooting, Crimmins had provided
officers the license plate number on the getaway car, 698–YNT;
and, authorities alerted officers to watch for this vehicle. Less than
two hours after the shooting, Tacoma Police Officer Mikael
Johnson received a stolen vehicle report filed by Parker for a
rented, dark gray or silver 2009 Chevy Impala with license plate
number 648–YNT. Officer Johnson noted that this vehicle
appeared "similar in description and license plate number to a
vehicle from the McCabe shooting." 5 VRP at 851.

7        Parker told Officer Johnson that he had parked the rented
vehicle in front of his girlfriend's apartment at 1:15 a.m. and left it
running while he went upstairs. When he returned to the parking
lot, the vehicle was gone. Parker claimed he had not reported it
stolen until after 3:00 a.m. because it was a rental, and he needed
to contact the rental company to obtain the vehicle's license plate
number and VIN (vehicle identification number).

10       Parker's story, however, differed from that of his girlfriend,
Christine Borland, who testified that in the early morning on
February 24, while she slept at her apartment, Parker called and
asked her to pick him up "from Chevron or McDonald's off [State
Route] 512." 6 VRP at 1036. Borland picked up Parker, and, while
returning to the apartment, Parker told her "[s]omething bad
happened" at McCabe's and that someone stole his car. 6 VRP at
1041. After returning to Borland's apartment, Borland went to
sleep, and Parker reported his rental car stolen.

14       Borland testified that she had initially lied during the
investigation when she said one of Parker's friends drove him
back to Borland's apartment after McCabe's. But feeling guilty
about lying to detectives, Borland corrected her story to reflect that
she had "picked him up off 512." 6 VRP at 1060. According to
Detective John Ringer, though, even Borland's testimony differed
from what she told him during an investigative interview. Borland
told Detective Ringer during an interview that Parker told her to tell
police that he had been at her apartment at 1:00 a.m. and that the
car was stolen there. Detective Ringer confirmed, however, that
Borland corrected her story to reflect that Parker requested she
pick him up at McDonald's off State Route 512. On March 10,
2009, Kent police located Parker's rented four-door Chevrolet
Impala, license number 648–YNT, in the Green River.

21

### Procedure

      The State charged Embry, Parker, and Morgan with
attempted first degree murder[4] with a firearm sentencing

---

[4] [Footnote by Court of Appeals] RCW 9A.28.020 and 9A.32.030(1)(a).

REPORT AND RECOMMENDATION - 4

enhancement,[5] as well as unlawful possession of a firearm.[6] It also charged Embry with conspiracy to commit first degree murder.[7]

Before trial, the defendants sought to exclude evidence of their gang affiliations. In an offer of proof, the State asserted that the defendants knew each other and had associated for some time. The State asserted that the gang evidence linked Embry, Parker, and Morgan because their gangs were known to associate and work in concert. Specifically, the State offered that Parker, a Hilltop Crip, was still upset about the New Year's morning fight between YGCs and Hilltop Crips.

The State argued that its evidence would show that Parker was still angry at Clark and sought members of King County's Hoover Crips, an allied gang, to retaliate against Clark, a YGC. The State also asserted that the video footage would show the defendants associating at McCabe's and in front of the club before Embry and Morgan ran ahead of Clark in the direction of the shooting, and that Embry and Morgan had to run ahead because Embry had to retrieve the gun from Parker's car.[8] The offer of proof also detailed that Parker reported his car stolen just hours after the shooting. The State reasoned that the gang evidence was the "glue that holds [the State's theory] together." 1 VRP at 39.

The trial court initially determined that although the State's offer connected the defendants, their gang activity, and the crime, the likelihood of undue prejudice outweighed its probative value. The State immediately moved for reconsideration. The State offered photographs from the defendants' MySpace pages, picturing them together among others—Hilltop Crips and Hoover Crips—flashing their gang signs. After reviewing these photographs, the trial court found increased probative value and reconsidered its ruling, determining that "the photographs I think tip the matters considerably." 1 VRP at 131. The court then allowed evidence of the defendants' gang affiliation under ER 404(b).

The trial court also heard arguments relating to how the State would present the video footage, as the State intended for Detective Ringer to play the video to the jury and narrate. The court determined that Detective Ringer could narrate the footage, but that "testimony should be limited to who the players are" in what he observed. 1 VRP at 123. The court barred him from rendering opinions speculating what people are pictured doing. The court also allowed Detective Ringer to testify as a gang expert

---

[5] [Footnote by Court of Appeals] RCW 9.94A.533(3).

[6] [Footnote by Court of Appeals] RCW 9.41.040(1)(a).

[7] [Footnote by Court of Appeals] RCW 9A.28.040 and 9A32.030(1)(a).

[8] [Footnote by Court of Appeals] Bouncers outside McCabe's pat down patrons for weapons upon entry.

REPORT AND RECOMMENDATION - 5

for purposes of explaining gang culture, though he could testify only as a "fact witness" regarding his observations on the video. 8 VRP at 1332.

At trial, Detective Ringer testified as both an expert on gang culture and as a fact witness narrating the video; and, he detailed his investigation relating to this incident. He recalled a meeting with Morgan at the Tacoma police station in which he played Morgan the surveillance video. Detective Ringer testified that after watching the video, Morgan stated, "That is what it is right there.... Can't do anything but go to trial with that." 7 VRP at 1261. Ringer testified that Morgan "made it clear that the code he was raised with would not allow him to cooperate or testify against others." 7 VRP at 1261.

Embry was the only defendant to testify at trial. He testified that when Detective Ringer questioned him about the shooting at McCabe's, he responded, "I don't know nothing, I didn't do nothing, and I wouldn't tell you if I did." 9 VRP at 1529.

Then, at one point during closing argument the State said, "Law enforcement did a great job investigating this case." 10 VRP at 1613. The State also discussed gang culture:

Code of the street is garbage. Code of the street: Don't cooperate with the police. Shoot people. Kill people. In this scenario, don't talk to the police about it.

Well, any criminal, of course, committing an act won't talk to the police. That makes sense because they are going to jail. They're going to be held accountable.

10 VRP at 1598.

The jury found each of the defendants guilty on all charges and answered affirmatively on the firearm enhancements.

Dkt. 52, Ex. 3 at 2-9, Published Opinion, *State v. Embry*, Court of Appeals Cause No. 40984-4-II (*State v. Embry*, 171 Wash. App. 714, 724–26, 287 P.3d 648, 654–55 (2012)).

II. State Court Procedural History

A. Direct Appeal

Mr. Embry appealed his convictions to the Washington Court of Appeals. Dkt. 52, Ex. 4, Brief of Appellant, *State v. Embry*, Court of Appeals Cause No. 40984-4-II; Ex. 5, Additional Grounds for Review, *State v. Embry*, Court of Appeals Cause No. 40984-4-II;

Ex. 6, Respondent's Brief, *State v. Embry*, Court of Appeals Cause No. 40984-4-II. The

Washington Court of Appeals affirmed the judgment and sentence.

Mr. Embry sought review by the Washington Supreme Court presenting the

following issues for review:

> 1. Did the trial court abuse its discretion in changing its ruling by relying on picture evidence that did not change a thing factually?
> 2. Was Petitioner's constitutional rights violated by joining the conspiracy to commit murder charge and not severing the trials of unavailable codefendant testimony from codefendants that could not be cross-examined?
> 3. Did the State meet it's [sic] burden establishing the elements required for the conspiracy to commit murder charge?
> 4. Did being found guilty of uncharged crime violate Petitioner's Due Process rights?

Dkt. 52, Ex. 7, at 6-7, Petition for Review (titled Motion for Discretionary Review

Supplement to Joined Briefs)[9], *State v. Embry*, Supreme Court Cause No. 88162-6.

The Washington Supreme Court denied review without comment on May 1,

2013. Dkt. 52, Ex. 8, Order, *State v. Embry*, Supreme Court Cause No. 88162-6. The

Washington Court of Appeals issued the mandate on October 20, 2017. Dkt. 52, Ex. 9,

Mandate, Court of Appeals Cause No. 40984-4-II.

B.    First Personal Restraint Petition (PRP)

Mr. Embry filed a personal restraint petition (PRP) on April 28, 2014. Dkts. 52-53,

Exhs. 10, 11, 12, PRP, Response Brief, and Reply Brief, *In re Embry*, Court of Appeals

Cause No. 46193-5. The Washington Court of Appeals denied the PRP and Mr. Embry

sought review by the Washington Supreme Court. Dkt. 53, Ex. 13, Order of Dismissal,

---

[9] On March 11, 2013, Mr. Embry filed a Motion for Discretionary Review Supplement to Joined Briefs apparently replacing his earlier filed Motion for Discretionary Review. Dkt. 52, Ex. 7.

REPORT AND RECOMMENDATION - 7

*In re Embry*, Court of Appeals Cause No. 46193-5; Dkt. 53, Ex. 14 Motion for

Discretionary Review[10], *In re Embry*, Supreme Court Cause No. 91574-1. The

Washington Supreme Court denied review on December 31, 2015. Dkt. 53, Ex. 15,

Ruling Denying Review, *In re Embry*, Supreme Court Cause No. 91574-1.

It appears, based upon the Supreme Court's decision, that Mr. Embry presented

three claims for review: (1) the trial court erred in imposing a firearm enhancement on

the conspiracy conviction; (2) prosecutorial misconduct; and (3) ineffective assistance of

counsel in failing to request a cautionary instruction, failing to investigate alibi and other

suspect evidence, failing to request a limiting instruction and moving to join his

conspiracy to commit murder charge with the other charges against him and his

codefendants. Dkt. 53, Ex. 14, at 2; Ex. 15.[11] In denying review, the Supreme Court

specifically noted that despite Mr. Embry's reassertion that the trial court improperly

imposed a firearm enhancement on the conspiracy conviction without a jury finding, that

the error had already been corrected. Dkt. 53, Ex. 15. Mr. Embry filed a motion to

modify the commissioner's ruling which was denied on April 27, 2016. Dkt. 53, Ex. 16,

Motion to Modify, *In re Embry*, Supreme Court Cause No. 91574-1; Ex. 17, Order

Denying Motion to Modify, *In re Embry*, Supreme Court Cause No. 91574-1

---

[10] The Court notes that respondent indicates that he only received a copy of the conclusion page from Mr. Embry's motion for discretionary review from the Washington Supreme Court and that while a copy of the motion was requested from the Pierce County Prosecutor's Office, that office only had a copy of the conclusion page as well. Dkt. 51, at 6, n. 8. Respondent indicates that the Washington Supreme Court was looking for a full copy of the motion for discretionary review and that respondent would submit the entire document when and if the Washington Supreme Court located a copy. *Id.*

[11] The Court notes that Mr. Embry has not filed a response to the respondent's answer or disputed that these were the claims raised to the Washington Supreme Court. Furthermore, respondent concedes that the claims Mr. Embry raises in his federal habeas petition are exhausted.

1      C.    Second Personal Restraint Petition (PRP)

2          On January 19, 2016, Mr. Embry filed a motion in Pierce County Superior Court

3    seeking modification of his judgment and sentence which was transferred to the Court

4    of Appeals as a personal restraint petition. Dkt. 53, Ex. 19, Order on Motion and Motion

5    to Modify Judgment and Sentence, *State v. Embry*, Pierce County Cause No. 09-1-

6    01485-4; Dkt. 53, Ex. 20, Response, *In re Embry*, Court of Appeals Cause No. 48498-6.

7    The Washington Court of Appeals denied the PRP and Mr. Embry sought review by the

8    Washington Supreme Court. Dkt. 54, Ex. 21, Order of Dismissal, *In re Embry*, Court of

9    Appeals Cause No. 48498-6-II; Dkt. 54, Ex. 22, Motion for Discretionary Review, *In re*

10   *Embry*, Supreme Court Cause No. 93850-4. In his Motion for Discretionary Review Mr.

11   Embry argued his right to be present during a critical stage of trial was violated when

12   the trial court considered a question from the jury in his absence and that defense

13   counsel was ineffective for failing to move for a new trial based on the error. Dkt. 54, Ex.

14   22.

15         The Washington Supreme Court denied review on July 17, 2017. Dkt. 54, Ex. 23,

16   Ruling Denying Review, *In re Embry*, Supreme Court Cause No. 93850-4. Mr. Embry

17   filed a motion to modify the commissioner's ruling which was denied on December 6,

18   2017. Dkt. 54, Exs. 24, 25, Motion to Modify and Order Denying Motion to Modify, *In re*

19   *Embry*, Supreme Court Cause No. 93850-4. The Court of Appeals issued a certificate of

20   finality on January 16, 2018, stating the matter became final on December 6, 2017. Dkt.

21   54, Ex. 26, Certification of Finality, *In re Embry*, Court of Appeals Cause No. 48498-6-II.

22

23

24

25

1

<u>EVIDENTIARY HEARING</u>

2        The decision to hold a hearing is discretionary. *Schriro v. Landrigan*, 550 U.S.

3   465, 473 (2007). "[A] federal court must consider whether such a hearing could enable

4   an applicant to prove the petition's factual allegations, which, if true, would entitle the

5   applicant to federal habeas relief." *Landrigan*, 550 U.S. at 474.  In determining whether

6   relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the

7   record before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

8        A hearing is not required if the allegations would not entitle petitioner to relief

9   under 28 U.S.C. § 2254(d). *Landrigan,* 550 U.S. at 474. "It follows that if the record

10  refutes the applicant's factual allegations or otherwise precludes habeas relief, a district

11  court is not required to hold an evidentiary hearing." *Id.*; *see also Cullen,* 563 U.S. 170;

12  181 (2011). The Court should hold that an evidentiary hearing is not required because,

13  as discussed below, Mr. Embry's claims may be resolved on the existing state court

14  record.

15

<u>EXHAUSTION OF STATE COURT REMEDIES</u>

16       The exhaustion of state court remedies is a prerequisite to granting a petition for

17  writ of *habeas corpus*. 28 U.S.C. § 2254(b)(1). If the State decides to waive the

18  exhaustion requirement, the waiver may not be implied or inferred; it must be explicitly

19  waived by respondent. 28 U.S.C. § 2254(b)(3). A petitioner can satisfy the exhaustion

20  requirement by providing the highest state court with a full and fair opportunity to

21  consider all claims before presenting them to the federal court. *Picard v. Connor*, 404

22  U.S. 270, 276 (1971); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985). Here,

23  respondent explicitly concedes Mr. Embry's claims are exhausted. Dkt. 51, at 8.

24

25

1

DISCUSSION

2

I.  Standard of Review

3

A *habeas corpus* petition filed under 28 U.S.C. § 2254:

4

[S]hall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

5

6

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

7

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

8

9

28 U.S.C. § 2254(d). A state court decision is "contrary to" the Supreme Court's "clearly

10

established precedent if the state court applies a rule that contradicts the governing law

11

set forth" in the Supreme Court's cases. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)

12

(quoting *Williams*, 529 U.S. at 405-06). It also is contrary to the Supreme Court's clearly

13

established precedent "if the state court confronts a set of facts that are materially

14

indistinguishable from a decision" of the Supreme Court, "and nevertheless arrives at a

15

result different from" that precedent. *Id.*

16

A state court decision involves an "unreasonable application" of the Supreme

17

Court's clearly established precedent if: (1) the state court "identifies the correct

18

governing legal rule" from the Supreme Court's cases, "but unreasonably applies it to

19

the facts" of the petitioner's case; or (2) the state court "unreasonably extends a legal

20

principle" from the Supreme Court's precedent "to a new context where it should not

21

apply or unreasonably refuses to extend that principle to a new context where it should

22

apply." *Williams*, 529 U.S. at 407. The state court decision, however, must be "more

23

than incorrect or erroneous." *Lockyer*, 538 U.S. at 75. That is, "[t]he state court's

24

25

1    application of clearly established law must be objectively unreasonable." *Id.*; *see also*

2    *Schriro*, 550 U.S. at 473.

3         This is a "'highly deferential standard," which "demands that state-court decisions

4    be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)

5    (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). "A state court's determination

6    that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists

7    could disagree' on the correctness of the state court's decision.'" *Harrington v. Richter*,

8    562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 662, 664 (2004)).

9    "[H]abeas corpus is a 'guard against extreme malfunctions in the state criminal justice

10   systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102

11   (quoting *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in

12   judgment)). "As a condition for obtaining habeas corpus from a federal court," therefore,

13   " a state prisoner must show that the state court's ruling on the claim being presented

14   was so lacking in justification that there was an error well understood and

15   comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.*

16   at 103.

17        Habeas corpus relief also may be granted "if a material factual finding of the state

18   court reflects 'an unreasonable determination of the facts in light of the evidence

19   presented in the State court proceeding.'" *Juan H. v. Allen*, 408 F.3d 1262, 1270 n.8

20   (9th Cir. 2005) (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)). A state court's factual

21   determination is "presumed to be correct," though, and the petitioner has "the burden of

22   rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §

23   2254(e)(1).

24

25

"[W]hether a state court's decision was unreasonable" also "must be assessed in light of the record the court had before it." *Holland v. Jackson*, 542 U.S. 649, 652 (2004); *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003). The district court's review "focuses on what a state court knew and did," and the state court's decision is "measured against [the Supreme] Court's precedents as of 'the time the state court renders its decision.'" *Cullen*, 563 U.S. at 182 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)); *see also Greene v. Fisher*, 132 S.Ct. 38, 44 (2011). In addition, "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (quoting *Lewis v. Jeffers*, 487 U.S. 764, 780 (1990)). Furthermore, unless the error is considered structural, it must have "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Katteakos v. United States*, 328 U.S. 750, 776 (1946)) (*habeas* petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'") (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).

II. <u>Ground One: Admission of Evidence – Gang Affiliation</u>

In his first ground for relief, Mr. Embry argues that the trial court erred and denied him a fair trial when it admitted evidence of gang affiliation under ER 404(b)[12] following

---

[12] Washington Evidence Rule 404(b) provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

1  "ex parte contact" with the prosecutor where no real evidence was admitted to change

2  prior rulings. Dkt. 9, at 5.

3       The State, during pretrial proceedings, sought to have admitted at trial evidence

4  under ER 404(b) of Mr. Embry's gang affiliation and the gang affiliations of his co-

5  defendants Mr. Parker and Mr. Morgan. Dkt. 54, Ex. 27, 51-63, 133-144, Verbatim

6  Report of Proceedings (VRP), Volume I, *State v. Embry*, Pierce County Superior Court

7  Cause No. 09-1-01458-4. Defense counsel objected to the admission of evidence. *Id.*

8       The trial court conducted the analysis of the proposed ER 404(b) evidence [13],

9  and initially denied introduction of the evidence finding the risk of prejudice outweighed

10 the probative value of the evidence. *Id.*, at 51-63. The prosecution moved for

11 reconsideration of the ruling and directed the court's attention to photographs submitted

12 of Mr. Embry, Mr. Parker and Mr. Morgan together showing what appeared to be gang

13 signs. *Id.* Upon reconsideration, the trial court admitted the evidence of gang affiliation

14 finding that the photographs showed what appeared to be an "alliance between the

15 three defendants that predated the crime in question." *Id.*, at 133-135.

16      The trial court explained, "the issue of the alliance and gang affiliation I think is

17 important in a case such as this, where, if the jury doesn't know that, deciding this case

18 in a total vacuum without any rational understanding of why there would be this

19 potentially deadly assault upon a victim in this case." *Id.*, at 135. Accordingly, in

20 weighing the probative value of the evidence against the risk of unfair prejudice, the trial

21 court determined the gang affiliation evidence was admissible. *Id.*, at 135-138.

22

23 [13] In order to admit ER 404(b) evidence, the trial court must:  (1) find by a preponderance of the evidence
   that the conduct occurred; (2) identify the purpose for which the evidence is offered; (3) determine
   whether the evidence is relevant; and, (4) weigh the probative value of the evidence against the risk of
24 unfair prejudice. *See State v. Gresham*, 173 Wn.2d 405, 421 (2012).

25

1    Mr. Embry, in his direct appeal to the Washington Court of Appeals, asserted the

2    trial court abused its discretion, and denied him a fair trial, when it failed to limit the

3    introduction of the ER 404(b) evidence. Dkt. 52, Ex. 4, 5. The Washington Court of

4    Appeals concluded the trial court had properly performed the requisite analysis of the

5    ER 404(b) evidence, explaining its conclusion as follows:

6           Embry, Morgan, and Parker assert that the trial court
            abused its discretion when it admitted evidence of their gang

7           affiliations under ER 404(b).[14] We disagree. [...]
                   We review ER 404(b) evidentiary rulings for abuse of

8           discretion. *State v. Yarbrough,* 151 Wash.App. 66, 81, 210 P.3d
            1029 (2009). A trial court abuses its discretion when its decision is

9           manifestly unreasonable or exercised on untenable grounds or for
            untenable reasons. *State v. Lord*, 161 Wash.2d 276, 283–84, 165

10          P.3d 1251 (2007). A trial court abuses its discretion when it relies
            on unsupported facts, takes a view that no reasonable person

11          would take, applies an incorrect legal standard, or bases its ruling
            on an erroneous legal view. *Lord,* 161 Wash.2d at 284, 165 P.3d
            1251.

12                 Courts consider evidence of gang affiliation prejudicial.
            *State v. Asaeli,* 150 Wash.App. 543, 579, 208 P.3d 1136, *review*

13          *denied,* 167 Wash.2d 1001, 220 P.3d 207 (2009) (noting "the
            inflammatory nature of gang evidence generally"). Therefore,

14          there must be a nexus between the crime and the gang before the
            trial court may find the evidence relevant. *State v. Scott,* 151

15          Wash.App. 520, 526, 213 P.3d 71 (2009), *review denied,* 168
            Wash.2d 1004, 226 P.3d 780 (2010). Courts may admit gang
            affiliation evidence to establish the motive for a crime or to show

16          that defendants acted in concert.[15] *Scott,* 151 Wash.App. at 527,
            213 P.3d 71. Gang evidence falls within the scope of ER 404(b).

17          *Yarbrough,* 151 Wash.App. at 81, 210 P.3d 1029. A trial court may
            admit gang evidence offered for proof of motive, intent, or identity.

18          *Yarbrough,* 151 Wash.App. at 81, 210 P.3d 1029. But before the
            trial court may admit such evidence, it must (1) find by a

19          preponderance of the evidence that misconduct occurred; (2)
            identify the purpose for which the evidence is sought to be

20          introduced; (3) determine whether the evidence is relevant to

21   [14] [Footnote 10 by Court of Appeals] Morgan also asserts that admission of this evidence violates his
     First Amendment rights, but because he does not brief this issue we do not consider it. RAP 10.3(a)(6).

22   [15] [Footnote 11 by Court of Appeals] Evidence of concerted action is a basis for finding multiple
     individuals guilty for taking part in a single crime. *Scott,* 151 Wash.App. at 527 n. 6, 213 P.3d 71; *see e.g.*

23   *State v. Lane,* 125 Wash.2d 825, 835, 889 P.2d 929 (1995) (three defendants guilty of murder though
     only one defendant shot the victim).

24

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

prove an element of the crime charged; and (4) weigh the probative value against the prejudicial effect. *Yarbrough,* 151 Wash.App. at 81–82, 210 P.3d 1029. […]

Here, Embry asserts that the State's gang evidence failed to demonstrate his intent, plan, preparation or motive; therefore, he argues, it lacked probative value. Morgan argues that any alleged gang affiliation lacked a nexus to the shooting. The requisite nexus did exist between the gang affiliation and the shooting, creating the necessary probative value; and, the trial court did not abuse its discretion after properly applying the ER 404(b) test.

In its offer of proof, the State asserted that it would present (1) photographic evidence showing Embry, Morgan, and Parker flashing gang signs; (2) witness statements that the defendants were active gang members; and (3) evidence of the friendly relationship between the Hoover and Hilltop Crips. Relying on the State's offer of proof, the trial court applied the four-part *Yarbrough* test to determine whether to admit the evidence of gang affiliation under ER 404(b).

The State's offer of proof claimed that gang evidence would link Embry, Parker, and Morgan because their gangs worked in concert; specifically, the State offered that Parker, a Hilltop Crip, remained angry with Clark, a YGC, about the New Year's morning fight, which involved their gangs. The State asserted that its evidence would show that Parker still held animosity toward Clark, so he recruited Embry and Morgan— Hoover Crips—, an allied gang—to retaliate against Clark. The State also asserted that in gang culture, seemingly minor altercations can quickly escalate to serious violence.

First, the trial court found by a preponderance of the evidence that the defendants belonged to gangs. The trial court found "some connection between these gentlemen and supposed gang activities and potentially with themselves as result of other activities." 1 VRP at 49. This determination satisfies the first part of the *Yarbrough* test. *See Yarbrough,* 151 Wash.App. at 81–82, 210 P.3d 1029.

Second, the trial court identified the purpose for which the gang evidence would be introduced, "I think there is a reason to consider the admission of the evidence, and that is for motive, intent and certainly plan or preparation." 1 VRP at 49., This determination satisfies the second part of the *Yarbrough* test. *See Yarbrough,* 151 Wash.App. at 82, 210 P.3d 1029.

Third, the court had to determine that the evidence was relevant to prove an element of the crimes charged. It also had to find a nexus between gang activity, the crime, and gang members Embry, Parker, and Morgan. *See Scott,* 151 Wash.App. at 526, 213 P.3d 71. The court found that requisite nexus and determined that the gang evidence was relevant to prove an element of Embry, Parker, and Morgan's charges:

> [W]hile there may not be a direct connection or
> loyalty or allegiance between the Hoover gang or

> Hilltop Crips, I think the inference here is there was
> close enough of [a] connection that would
> encourage, at the request of Mr. Parker, two known
> associates to commit allegedly a significant assault
> upon the victim in this case.

1 VRP at 134.

To demonstrate that Embry committed conspiracy to commit first degree murder, the State had to prove that he "agreed with one or more persons to engage in or cause the performance of conduct constituting [attempted first degree murder]." Clerk's Papers (CP) (Embry) at 192. To prove that Morgan and Parker acted as accomplices to commit attempted first degree murder, the State had to prove that they "solicit[ed], command[ed], encourage[d], or request[ed] another person to commit" the attempted first degree murder, or "aid[ed] or agree[d] to aid another person in planning or committing the crime." CP (Embry) at 172. And the State could prove that Parker and Morgan provided Embry "assistance[,] whether given by words, acts, encouragement, support, or presence." CP (Embry) at 172. Accordingly, the trial court satisfied the third part of the *Yarbrough* test. *See Yarbrough,* 151 Wash.App. at 82, 210 P.3d 1029.

Fourth, the trial court weighed the probative value of the gang evidence against its potential prejudicial effect, initially noting that "the difficulty is in the probative value of this particular evidence in the context of this case." 1 VRP at 49. The trial court expressed the difficulty in finding probative value:

> While there certainly may be some connection here
> between the gang activity and this crime, it's very
> scant showing. And it's hard to say that [the] jury's
> going to consider the facts of this case based upon
> the testimony presented when confronted with
> testimony that these are gang members. And I think
> because of that, I can't find probative value of why
> the State is requesting the evidence in this case to
> outweigh the extreme prejudicial effect.

1 VRP at 50.

The trial court further explained its hesitancy to admit gang evidence:

> I think the infusion of the gang—without more,
> without saying that the incident at [54th Street Bar
> and Grill] involved all three [codefendants], that it
> was a known battle over drug turf or economic
> related offenses, something along those lines. I
> think beyond that is stretching the admissibility of
> gang in a case where there may be gang
> involvement by three defendants beyond what's
> intended by the current case law.

1 VRP at 51.

The State immediately moved for reconsideration and offered MySpace photos of Embry, Parker, and Morgan together flashing gang signs. The trial court reviewed this offer and stated

that "the photographs I think tip the matters considerably." 1 VRP at 131. "[T]hey show what appears to be alliance between the three defendants that predated the crime in question." 1 VRP at 132. The trial court added:

> [T]he issue of the alliance and gang affiliation I think is important in a case such as this, where, if the jury doesn't know that, deciding this case in a total vacuum without any rational understanding of why there would be this potentially deadly assault upon a victim in this case.

1 VRP at 132.

The trial court returned to the fourth part of the *Yarbrough* test. It reversed its initial determination: "I think [the photos] tip the balancing in favor of admissibility of the evidence, despite the substantial prejudice that there still may be there for the defendants." 1 VRP at 134. Accordingly, after performing this balancing test, weighing the probative value of the gang evidence against the potential for undue prejudice, the trial court satisfied the fourth part of the *Yarbrough* test.[16] *See Yarbrough,* 151 Wash.App. at 82, 210 p.3d 1029.

Additionally, the *Yarbrough* case supports the trial court's admission of ER 404(b) gang evidence here. In *Yarbrough,* we held that the trial court properly allowed gang evidence because Yarbrough's mental state and intent to cause great bodily harm to the victim were relevant to his first degree assault charge. *Yarbrough,* 151 Wash.App. at 86, 210 P.3d 1029. The State presented evidence of Yarbrough's gang affiliation and his perception that the victim associated with a rival gang, and information regarding a previous altercation between the two gangs, which helped the jury to better understand his mental state and intent regarding his assault charge against the eventual victim. *Yarbrough,* 151 Wash.App. at 87, 210 P.3d 1029. The present matter is analogous to *Yarbrough,* as there we held that the trial court properly admitted gang evidence under ER 404(b) to show the defendant's mental state and intent to commit the crime charged. Here the State presented evidence of the defendants' gang affiliation and the victim's affiliation with a different gang, and a previous altercation between members of the victim's and defendants' gangs. As in *Yarbrough,* the trial court here found that the gang evidence was probative in proving the elements of the charged crime. Finding no manifest abuse of discretion such that no reasonable trial court would have ruled as the trial court did, we affirm the trial court's ER 404(b) ruling.[17] *Yarbrough,* 151 Wash.App. at 81, 210 P.3d 1029.

---

[16] [Footnote 12 by Court of Appeals] The court also admitted the evidence under res gestae.

[17] [Footnote 13 by Court of Appeals] The dissent compares this matter to *Yarbrough,* 151 Wash.App. 66, 210 P.3d 1029; *State v. Campbell*, 78 Wash.App. 813, 901 P.2d 1050 (1995); *State v. Lane,* 125 Wash.2d 825, 889 P.2d 929 (1995); and *State v. Boot,* 89 Wash.App. 780, 950 P.2d 964 (1998). In none of those four cases, though, did the reviewing court find that the appellant demonstrated an abuse of

1

2    Dkt. 52, Ex. 3 at 2-9, Published Opinion, *State v. Embry*, Court of Appeals Cause No.

3    40984-4-II (*State v. Embry*, 171 Wash. App. 714, 724–26, 287 P.3d 648, 654–55

4    (2012)). The Supreme Court denied review without comment on direct appeal. Dkt. 52,

5    Ex. 8, Order, *State v. Embry*, Supreme Court Cause No. 88162-6.

          In his first PRP Mr. Embry appeared to modify his challenge to the admission of

6    gang affiliation evidence slightly to allege that the trial court's decision to admit the gang

7    affiliation evidence was also the product of *ex parte* contact between the prosecutor and

8    the trial judge. Dkt. 52, Ex. 10, at 18. Specifically, he alleged that after the trial court

9    initially denied admission of the gang affiliation evidence under ER 404(b), the trial

10   judge left the courtroom and the prosecutor followed him to his chambers alone and

11   presented the trial judge picture evidence and unopposed argument beyond the

12   presence of the defendant or defense counsel. *Id.* Mr. Embry alleged that after this *ex*

13   *parte* discussion, the trial judge returned and announced he would now allow all the

14   gang evidence to come in. *Id.* The Court of Appeals, in denying Mr. Embry's PRP,

15   determined there was no evidence the trial court's gang affiliation ruling occurred

16   because of *ex parte* contacts and, as such, Mr. Embry had "fail[ed] in his burden of

17   presenting evidence to substantiate his allegation." Dkt. 53, Ex. 13, at 2, Order

18   Dismissing Petition, *In re Embry*, Court of Appeals Case No. 46193-5-II.

          It is well established that "federal habeas corpus relief does not lie for errors of

19   state law." *Lewis v. Jeffers*, 497 U.S. 764 (1990). The Supreme Court emphasized in

20

21

22   ───────────────
     discretion. This abuse of discretion standard defers to the trial court's judgment in deciding the
23   admissibility of potentially prejudicial evidence. *See State v. Posey,* 161 Wash.2d 638, 648, 167 P.3d 560
     (2007) ("Generally, we defer to the assessment of the trial judge who is best suited to determine the
     prejudicial effect of a piece of evidence.").

24

25

1   *Estelle v. McGuire*, 502 U.S. 62 (1991), that it is not the province of federal habeas

2   courts to re-examine state court conclusions regarding matters of state law and that a

3   federal court, in conducting habeas review "is limited to deciding whether a conviction

4   violated the Constitution, laws or treaties of the United States." *Id.*, at 67-68. Thus, state

5   court procedural and evidentiary rulings are not subject to federal habeas review unless

6   such rulings "violate[] federal law, either by infringing upon a specific constitutional or

7   statutory provision or by depriving the defendant of the fundamentally fair trial

8   guaranteed by due process." *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995)

9   (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)). *See also*, *Jammal v. Van de Kamp*, 926

10  F.2d 918, 919-20 (9th Cir. 1991) ("the issue for [a reviewing court] always, is whether

11  the state proceedings satisfied due process; the presence or absence of a state law

12  violation is largely beside the point.") .

13      "A habeas petitioner bears a heavy burden in showing a due process violation

14  based on an evidentiary decision." *Boyde v. Brown,* 404 F.3d 1159, 1172 (9th Cir.),

15  *amended by*, 421 F.3d 1154 (9th Cir. 2005). Evidence presented by the prosecution will

16  often raise more than one inference, some permissible, some not, and it is up to the jury

17  to sort out those inferences in light of the court's instructions. *Id.*; *Jammal,* 926 F.2d at

18  920. "Only if there are *no* permissible inferences the jury may draw from the evidence

19  can its admission violate due process. Even then, the evidence must 'be of such quality

20  as necessarily prevents a fair trial.'" *Jammal,* 926 F.3d at 920 (emphasis in original)

21  (quoting *Kealohapauole,* 800 F.2d at 1465); *Fuller v. Warden, High Desert State Prison*,

22  No. CV 10-5515-DSF JEM, 2012 WL 1155800, at *17 (C.D. Cal. Feb. 14, 2012), *report*

23  *and recommendation adopted*, No. CV 10-5515-DSF JEM, 2012 WL 1144565 (C.D.

24

25

1    Cal. Apr. 4, 2012). When considering whether erroneously admitted evidence rendered

2    a trial fundamentally unfair, the test is whether the error "'had substantial and injurious

3    effect or influence in determining the jury's verdict.'" *Brecht*, 507 U.S. at 638.

4        AEDPA is also important to consider when applying the standard of review. In

5    *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009), the Ninth Circuit observed

6    that "even clearly erroneous admissions of evidence that render a trial fundamentally

7    unfair may not permit the grant of federal habeas corpus relief if not forbidden by 'clearly

8    established Federal law,' as laid out by the Supreme Court." The Ninth Circuit went on

9    to explain that

10        The Supreme Court has made very few rulings regarding the admission of
         evidence as a violation of due process. Although the Court has been clear that a
11        writ should be issued when constitutional errors have rendered the trial
         fundamentally unfair, . . . it has not yet made a clear ruling that admission of
12        irrelevant or overtly prejudicial evidence constitutes a due process violation
         sufficient to warrant issuance of the writ.

13    *Id.* (citation omitted.)

14        In his petition, Mr. Embry challenges the conclusion of the Washington Court of

15    Appeals, arguing that the trial court, in analyzing the ER 404(b) evidence, improperly

16    admitted prejudicial gang related evidence. Mr. Embry maintains that if the trial court had

17    engaged in a proper analysis of the evidence, it would have limited the introduction of that

18    evidence, and that the trial court decided to admit the evidence based upon an *ex parte*

19    conversation with the prosecutor.

20        Despite Mr. Embry's claim that the trial court's failure to limit the introduction of

21    ER 404(b) evidence violated his right to a fair trial, the claim, in fact, implicates only

22    state law concerns. But even assuming the claim could be deemed to implicate Mr.

23    Embry's federal constitutional rights, Mr. Embry cites to no clearly established federal

24

25

REPORT AND RECOMMENDATION - 21

law which would have required the trial court to limit the introduction of the evidence presented here. *See Holly*, 568 F.3d at 1101 (noting the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.").

Even, assuming arguendo, that Mr. Embry could satisfy 28 U.S.C. § 2254(d), he has not shown the gang related evidence rendered his trial fundamentally unfair. The Court notes that under federal law, gang affiliation evidence has been found to be admissible when relevant to a material issue in the case. *United States v. Abel*, 469 U.S. 45, 49 (1984) (gang affiliation evidence admissible on issue of bias); *United States v. Hankey*, 203 F.3d 1160, 1171–73 (9th Cir. 2000) (gang affiliation evidence admissible to establish bias and coercion); *Windham,* 163 F.3d at 1103–04 (admission of gang involvement was relevant to prove motive); *United States v. Easter*, 66 F.3d 1018, 1021 (9th Cir.1995) (gang affiliation evidence admissible to prove identity). Here, the record shows the gang affiliation evidence was relevant to establish motive, intent, and accomplice liability, plan and preparation, and was part of the res gestae of the crimes. It explained Mr. Embry's motive and intent in deciding to shoot Mr. Clark, even though he was not involved in the fight between Mr. Clark and Mr. Parker and had no prior relationship with Mr. Clark. Because the record shows there were permissible inferences to be drawn from the gang-related evidence, there was no due process violation. *See Jammal,* 926 F.3d at 920 ("Only if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process. Even then, the evidence must 'be of such quality as necessarily prevents a fair trial.'").

1    With respect to Mr. Embry's assertion that the trial court's decision to admit gang-

2    related evidence was the product of *ex parte* contact, Mr. Embry fails to demonstrate

3    the Court of Appeals' finding that there was no evidence to support his claim was an

4    unreasonable determination of the facts. There is nothing in the verbatim report of

5    proceedings indicating that any sort of *ex parte* contact occurred related to the trial

6    court's evidentiary ruling and Mr. Embry presents no evidence beyond his conclusory

7    assertion that such contact occurred. Further, contrary to Mr. Embry's assertion that the

8    photographs and argument for reconsideration were submitted by the prosecutor *ex*

9    *parte*, the record reflects that the prosecutor requested reconsideration, counsel for the

10   prosecution and defense made arguments related to the request for reconsideration,

11   and the trial court reconsidered its evidentiary ruling and provided the explanation for

12   changing its ruling, all on the record in open court. Dkt. 54, Ex. 27, 51-63, 133-144,

13   Verbatim Report of Proceedings, Volume I, *State v. Embry*, Pierce County Superior

14   Court Cause No. 09-1-01458-4.

15   Mr. Embry fails to demonstrate that the trial court's admission of gang-related

16   evidence rendered his trial fundamentally unfair or that the decisions of the appellate

17   courts rejecting Mr. Embry's challenge to the evidentiary ruling of the trial court were

18   contrary to, or an unreasonable application of, federal law as established by the United

19   States Supreme Court, or an unreasonable determination of the facts. Accordingly, Mr.

20   Embry's federal habeas petition should be denied with respect to this claim.

21   III.  Ground Two: Improper Joinder

22   Mr. Embry claims his right to a fair trial was violated when the trial court joined, in

23   one trial, the conspiracy charge against him and consolidated his trial with co-

24

25

REPORT AND RECOMMENDATION - 23

1  defendants Morgan and Parker. Dkt. 9, at 9; Dkt. 9-1, at 7-8. Respondent contends Mr.

2  Embry's claim is not based upon clearly establish federal law as determined by the

3  Supreme Court and, even if it was, that the state courts did not unreasonably apply that

4  law. Dkt. 51, at 16.

5      With respect to joinder of counts and defendants, the Supreme Court has stated:

6  "Improper joinder does not, in itself, violate the Constitution. Rather, misjoinder would

7  rise to the level of a constitutional violation only if it results in prejudice so great as to

8  deny a defendant his Fifth Amendment right to a fair trial." *United States v. Lane,* 474

9  U.S. 438, 446 n. 8 (1986). The Supreme Court has also stated that severance should

10 be granted when "there is a serious risk that a joint trial would compromise a specific

11 trial right of one of the defendants, or prevent the jury from making a reliable judgment

12 about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 538, 113 S.Ct. 933, 122

13 L.Ed.2d 317 (1993).

14     However, in *Collins v. Runnels*, 603 F.3d 1127, 1132 (9th Cir. 2010), the Ninth

15 Circuit determined that these comments in *Lane* and *Zafiro* were dicta, noting that the

16 cases concerned joinder under the Federal Rules of Criminal Procedure and that no

17 federal constitutional issue was before the Supreme Court. As such, pursuant to the

18 Ninth Circuit's holding, there is no clearly established federal law within the meaning of

19 AEDPA setting forth constitutional standards for severance or improper joinder of

20 counts or defendants. *Collins*, 603 F.3d at 1132–33 (rejecting argument that *Lane* sets

21 forth clearly established federal law on this issue); *Grajeda v. Scribner,* 541 Fed. Appx.

22 776, 778 (9th Cir. 2013) ("The Supreme Court has not held that a state or federal trial

23 court's denial of a motion to sever can, in itself, violate the Constitution."); *Hollie v.*

24

25

*Hedgpeth,* 456 Fed. Appx. 685, 685 (9th Cir. 2011) ("The Supreme Court has never held that a trial court's failure to provide separate trials on different charges implicates a defendant's right to due process."); *see also Runningeagle v. Ryan*, 686 F.3d 758, 774 (9th Cir. 2012) ("[T]here is no clearly established federal law requiring severance of criminal trials in state court even when the defendants assert mutually antagonistic defenses."); *see also Horcasitas v. Montgomery*, No. CV 15-1813-JLS (KES), 2015 WL 10709902, at *10 (C.D. Cal. Dec. 23, 2015), *report and recommendation adopted*, No. CV1501813JLSKES, 2016 WL 1588474 (C.D. Cal. Apr. 19, 2016); *and see Bondurant v. Foss*, No. 19CV0528-BEN (BLM), 2019 WL 3848796, at *8 (S.D. Cal. Aug. 15, 2019).

There is a line of Ninth Circuit opinions holding that the misjoinder of counts may be grounds for habeas relief if joinder renders the defendant's trial "fundamentally unfair." *See Davis v. Woodford,* 384 F.3d 628, 638 (9th Cir. 2004); *Bean v. Calderon,* 163 F.3d 1073, 1086 (9th Cir. 1998); *Featherstone v. Estelle,* 948 F.2d 1497, 1503 (9th Cir. 1991). Yet that line of authority appears to rely on the pre-AEDPA standard of review or on cases applying that standard. *See Mejia v. Foulk,* CV 13–9465–AB (RNB), 2015 WL 391688, at *10 n. 7 (C.D. Cal., Jan. 28, 2015) (noting that these Ninth Circuit cases applied the pre-AEDPA standard of review, or relied on cases applying the pre–AEDPA standard of review, based either on dictum in *Lane* or on Ninth Circuit precedent unsupported by Supreme Court authority).

The Washington Court of Appeals rejected Mr. Embry's claim that the trial court improperly consolidated his case for trial with his co-defendants in the context of Mr. Embry's direct appeal. Specifically, the state Court of Appeals found:

1

2

3

4

5

> In his statement of additional grounds for review (SAG)[18] Embry asserts that the trial court abused its discretion when it joined his charges and consolidated his case for trial with those of Morgan and Parker. CrR 4.3(b) provides that a trial court may join multiple defendants in a single charging document when each is charged with the same offense or with offenses so closely connected that it would be difficult to separate proof of one offense from proof of others. CrR 4.3.1(c) provides that a court may consolidate multiple informations for trial if, under CrR 4.3, the defendants could have been joined in a single information.

6

7

8

9

> We review de novo questions of whether a trial court properly joined two or more offenses. *State v. Bryant,* 89 Wash.App. 857, 864, 950 P.2d 1004 (1998), *review denied,* 137 Wash.2d 1017, 978 P.2d 1100 (1999). A defendant must demonstrate that a joint trial was so manifestly prejudicial as to outweigh the concern for judicial economy. *State v. Philips,* 108 Wash.2d 627, 640, 741 P.2d 24 (1987). To meet this burden, the defendant must point to specific prejudice. *State v. Grisby,* 97 Wash.2d 493, 507, 647 P.2d 6 (1982), cert. denied 459 U.S. 1211 (1983).

10

11

12

13

14

15

16

> Embry appears to raise this issue for the first time on appeal, so he must demonstrate that the joint trial was so manifestly prejudicial that it outweighed the concern for judicial economy. *See Philips,* 108 Wash.2d at 640, 741 P.2d 24. Embry fails to make any argument as to why a joint trial was prejudicial. He cannot demonstrate that he suffered manifest prejudice as a result of the court's joinder because two eyewitnesses identified him as the shooter, and another witness saw him fleeing the scene of the shooting with a gun in his hand. This evidence was admissible against Embry whether or not he was jointly tried with Morgan and Parker. Given this strong evidence against Embry, he cannot show he suffered manifest prejudice as a result of the joint trial.

17

18

19

Dkt. 52, Ex. 3 at 2-9, Published Opinion, *State v. Embry*, Court of Appeals Cause No. 40984-4-II (*State v. Embry*, 171 Wash. App. 714, 724–26, 287 P.3d 648, 654–55 (2012)).

20

21

In denying Mr. Embry's first PRP, the Washington Supreme Court also addressed the joinder of the conspiracy charge and found it proper in the context of

22

23

---

[18] [Footnote 9 by Court of Appeals] RAP 10.10.

24

25

REPORT AND RECOMMENDATION - 26

1  denying Mr. Embry's claim of ineffective assistance of counsel based on counsel's

2  request to join that charge[19]:

3      Finally, as to counsel's motion to join the conspiracy
   charge with the other charges, the acting chief judge noted that

4  this issue of joinder was addressed and decided against Mr.
   Embry on direct appeal. But while Mr. Embry did argue on appeal

5  that the trial court should not have joined the charges and the
   trials of Mr. Embry's codefendants, the Court of Appeals in its

6  opinion seemingly focused on the propriety of trying Mr. Embry
   with his codefendants rather than specifically on the propriety of

7  joining the conspiracy charges. *Embry*, 171 Wn. App. at 731.
   Nonetheless, Mr. Embry demonstrates no unprofessional error or

8  prejudice in defense counsel's motion to join the conspiracy
   charge. First, joinder was proper because the conspiracy charge

9  arose out of the same conduct or series of acts involved in the
   other charges. CrR 4.3(a)(2). Second, Mr. Embry does not show

10 he was prejudiced by the joinder. *See State v. Bryant*, 89 Wn.
   App. 857, 865-68, 950 P.2d 1004 (1998) (if joinder permissible

11 under CrR 4.3(a)(2), court next considers whether joinder
   prejudiced defendant). He appears to mainly argue that, had he

12 been tried separately on the conspiracy charge, codefendant
   Bryant Morgan would have been able to testify in his defense. He

13 relies on an affidavit Mr. Morgan recently prepared stating that he
   visited with Mr. Embry at the nightclub where the crimes occurred,

14 but that they never discussed harming the attempted murder
   victim. But even if Mr. Morgan would have been willing to so testify

15 at the time of trial (and he does not assert that he would have), the
   conspiracy conviction was based on multiple pieces of evidence

16 establishing a strong circumstantial case. *See Embry*, 171 Wn.
   App. at 743-45. Mr. Embry does not show that there is a

17 reasonable probability the outcome would have been different had
   Mr. Morgan testified, such that joinder of the conspiracy charge
   amounted to ineffective assistance of counsel entitling Mr. Embry

18 to relief.

      Because the Supreme Court has not clearly established that improper joinder of

19 counts or defendants violates the federal constitution, Mr. Embry cannot establish that

20 the state court acted contrary to or unreasonably applied clearly established Supreme

21 Court precedent in rejecting Mr. Embry's challenge to the joinder of charges and

22

23

[19] The Court notes that Mr. Embry's trial counsel affirmatively requested the joinder. Dkt. 54, Ex. 24, VRP,
24 Volume 2, at 228.

25

1    defendants. *See Wright v. Van Patten*, 552 U.S. 120 (2008) (when Supreme Court

2    cases "give no clear answer to the question presented, let alone one in [petitioner]'s

3    favor," a state court cannot have unreasonably applied clearly established federal law).

4           Furthermore, even assuming, arguendo, that Mr. Embry could obtain habeas

5    relief under AEDPA upon a showing that the joinder of charges and defendants

6    rendered his trial fundamentally unfair, Mr. Embry cannot make such a showing. In pre-

7    AEDPA case law, the Ninth Circuit stated that the requisite level of prejudice required to

8    render a trial "fundamentally unfair" would be reached only "if the impermissible joinder

9    had a substantial and injurious effect or influence in determining the jury's verdict."

10   *Davis*, 384 F.3d at 638 (quoting *Sandoval,* 241 F.3d at 772). In evaluating prejudice, the

11   focus is particularly on the cross-admissibility of evidence and the dangers of "spillover."

12   *Davis*, 384 F.3d at 638.

13          Nothing in the record suggests Mr. Embry's trial was rendered fundamentally

14   unfair by the joinder of charges or defendants. In his habeas petition Mr. Embry appears

15   to argue the joinder of charges and defendants rendered his trial fundamentally unfair

16   because it allowed the state to use the "testimony of guilt" of non-testifying co-defendant

17   Morgan Bryant without any chance for cross-examination in violation of *Bruton v. U.S.*,

18   391 U.S. 123 (1968).[20] Dkt. 9, 9-2. In *Bruton*, the Supreme Court held the Sixth

19   Amendment right of confrontation is violated when a facially incriminating confession of

20   a non-testifying co-defendant is introduced at a joint trial, even if the jury is instructed to

21   consider the confession only against the co-defendant. *Bruton*, 391 U.S. at 135. But the

22

23

24   _____

[20] The Court notes that Mr. Embry did not raise this argument as a separate claim for relief and the state
appellate courts did not address it as such.

25

REPORT AND RECOMMENDATION - 28

1  admission of a non-testifying co-defendant's statement does not automatically trigger

2  the Sixth Amendment. The admission of a non-testifying codefendant's statement

3  violates the Confrontation Clause only *if* the statement facially, expressly, or powerfully

4  implicates the defendant. *United States v. Hernandez-Orellana*, 539 F.3d 994, 1001 (9th

5  Cir. 2008).

6        A statement violates the Sixth Amendment when it names and thus expressly

7  implicates a defendant or where the statement, despite redactions, obviously refers to

8  the defendant, i.e. "involve[s] inferences that a jury ordinarily could make immediately,

9  even were the confession the very first item introduced at trial." *Gray v. Maryland*, 523,

10  U.S. 185, 196 (1998). When a confession is not incriminating on its face but is

11  incriminating only when linked with evidence introduced later at trial, the Sixth

12  Amendment protections set forth in *Bruton* do not apply. *Richardson v. Marsh*, 481 U.S.

13  200, 201 (1987); *Mason v. Yarborough,* 447 F.3d 693, 695 (9th Cir.2006) (*Richardson*

14  "specifically exempts a statement, not incriminating on its face, that implicates the

15  defendant only in connection to other admitted evidence.").

16        The Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 68, (2004),

17  determined the Sixth Amendment Confrontation Clause applies only to "testimonial

18  statements." Consequently, many circuit courts, including the Ninth Circuit have found

19  *Bruton'*s Sixth Amendment protections apply only to "testimonial out of court

20  codefendant statements." *Lucero v. Holland*, 902 F.3d 979, 988 (9th Cir. 2018) ("We

21  agree and conclude that only testimonial codefendant statements are subject to the

22  federal Confrontation Clause limits established in *Bruton.*").

23

24

25

1    In his federal habeas petition, Mr. Embry argues that Detective Ringer introduced

2 his co-defendant Mr. Morgan's "statement about the video" which shows guilt and the

3 "code of the street" made it so he could not testify. Dkt. 9-1, at 8. It appears Mr. Embry

4 is referring to the statements given by Mr. Morgan to Detective Ringer during the course

5 of a police interview and to which Detective Ringer testified at trial. Specifically,

6 Detective Ringer testified:

7           Morgan was taken to the computer at the MUGIS computer
   and reporting detective showed him portions of the video at
8    McCabe's. He was shown how he arrived with two others. He
   acknowledged that he was the person with the red hoody. He
9    identified himself in the video. He was shown the actions of those
   present after leaving McCabe's.
10          Morgan acknowledged himself. When shown that he
   jogged off towards the scene of the shooting, he said he didn't
11   know why he had ran off. After the video was turned off, Morgan
   concluded, quote, "It is what it is. You will be able to put it all
12   together," end quote.
           He also made clear that the code he was raised with would
13   not allow him to cooperate or testify against others. His answer
   was, quote, "I'll take my chances with the court. I have got to go all
14   the way, trial, witnesses, everything," end quote.
           He also said on multiple occasions, quote, "that is what it is
15   right there," end quote. He repeated that, quote "Can't do anything
   but go to trial with that. Can't do anything else," period, end quote.

16 Dkt. 55, Ex. 31, VRP, Volume 7, at 1261.

17    Here, the statements made by Mr. Morgan cannot be said to facially, expressly,

18 or powerfully implicate the defendant. *See Hernandez-Orellana*, 539 F.3d at 1001. Mr.

19 Morgan's statements do not name, obviously refer to or expressly implicate Mr. Embry

20 or "involve inferences that a jury ordinarily could make immediately, even were the

21 confession the very first item introduced at trial." *Gray*, 523 U.S. at 196. Because Mr.

22 Morgan's statements are not incriminating on their face, and to the extent they could be

23 considered incriminating at all, at very best they would only be so when linked with other

24

25

evidence introduced at trial, they do not meet the criteria set forth in *Bruton*. *Richardson*, 481 U.S. at 201.[21]

Accordingly, to the extent Mr. Embry argues his trial was rendered fundamentally unfair by the joinder of defendants and counts because it allowed the state to use non-testifying co-defendant statements in violation of *Bruton*, he fails to show the statements meet the criteria under *Bruton*. *Bruton*, 391 U.S. 123. Thus, he fails to show the joinder had "a substantial and injurious effect or influence in determining the jury's verdict" on this basis or that the state appellate court's rejection of his joinder claim was contrary to or an unreasonable application of clearly established federal law, or an unreasonable determination of the facts. *Davis*, 384 F.3d at 638 (quoting *Sandoval*, 241 F.3d at 772).

Mr. Embry also appears to argue the joinder of the conspiracy to commit murder charge rendered his trial unfair because it allowed the prosecution to "parade before the jury" the "fifty to seventy five [sic] other nonrelated gang members and nonrelated crime sprees they committed[.]" Dkt. 9, at 9. Mr. Embry points to the testimony of Curtis Hudson and Detective Ringer that testifying in Mr. Embry's trial as well as in other cases regarding alleged crimes was a condition of Mr. Hudson's plea deal. Mr. Embry argues this testimony painted him as "'the worst of the worst' by flaunting that the petitioner was

---

[21] The Court notes that Mr. Embry also includes his Petition for Review submitted on his direct appeal to the Washington Supreme Court as an attachment to his federal habeas petition. *See* Dkt. 9-2. He indicates in his petition that he intends to incorporate the facts related to the claims raised in his petition from his Petition for Review. Dkt. 9. In citing *Bruton* in the context of his improper joinder claim in his Petition for Review, Mr. Embry also references various other pages in the transcript stating "all of the defendants['] statements were allowed to come in." Dkt. 9-2, at 16. However, Mr. Embry does not explain what statements he is referring to that he believes violated *Bruton* or make specific arguments with respect thereto. Furthermore, in reviewing these other referenced pages of the trial court record, the Court sees no statements that were admitted which would appear to meet the criteria of *Bruton*.

1   charged in over 100 crimes with 50 to 75 co-gang bangers of which '36 were charged'

2   that included the Petitioner." Dkt. 9, at 19.

3   The Court notes that in the first instance the testimony does not appear to

4   indicate that Mr. Embry himself was charged or implicated in any of the other alleged

5   crimes for which Mr. Hudson had agreed to testify as a condition of his plea deal. Dkt.

6   56, Ex. 34, VRP, Volume 6, at 915-917; Dkt. 55, Ex. 32, VRP, Volume 8, at 1447-1451.

7   It also does not appear from the record that defense counsel objected to the specific

8   testimony by Mr. Hudson himself regarding the conditions of his plea deal.[22] Dkt. 56, Ex.

9   34, VRP, Volume 6, at 915-917. It would also appear that the testimony regarding the

10  conditions of Mr. Hudson's plea deal was in many ways favorable to the defense in

11  challenging his credibility as a witness given that testifying at Mr. Embry's trial and

12  others was a condition of that plea deal. In fact, Mr. Embry's attorney himself

13  commented on this in his closing statement emphasizing that "[t]hey [Mr. Hernandez

14  and Mr. Hudson] want to be helpful to the State. It is in their best interests. My God,

15  what would you do to get out of a life sentence?" Dkt. 57, Ex. 36, VRP, Volume 11, at

16  1740.

17  Further, and, as discussed in more detail above and below, there was substantial

18  other evidence in the record supporting Mr. Embry's convictions for attempted first-

19  degree murder (including eyewitness testimony by the victim identifying Mr. Embry as

20  the shooter) and conspiracy to commit first-degree murder, as discussed in more detail

21  below (see *infra* at Section IV). As such, Mr. Embry fails to show that Mr. Hudson's

22

23  [22] The Court notes that it appears Mr. Parker's defense counsel objected to the relevance of aspects of Detective Ringer's testimony describing the conditions of Mr. Hudson's plea deal, but it does not appear that Mr. Embry's defense counsel objected to that particular testimony. Dkt. 55, Ex. 32, VRP, Volume 8, at 1447-1451.

24

25

REPORT AND RECOMMENDATION - 32

testimony that, as a condition of his plea deal, he was testifying in Mr. Embry's trial as well as in several other cases, rendered Mr. Embry's trial fundamentally unfair. In sum, Mr. Embry fails to show the joinder had "a substantial and injurious effect or influence in determining the jury's verdict" on this basis or that the state appellate court's rejection of his joinder claim was contrary to or an unreasonable application of clearly established federal law, or an unreasonable determination of the facts. *Davis*, 384 F.3d at 638 (quoting *Sandoval,* 241 F.3d at 772).[23]

IV.   Ground Three: Insufficient Evidence – Conspiracy to Commit Murder

Mr. Embry claims the state presented insufficient evidence to support the charge of conspiracy to commit murder. Dkt. 9.

The Constitution forbids the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358 (1970). When evaluating a claim of insufficiency of the evidence to support a conviction, the reviewing court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)

---

[23] The Court also notes that, with respect to the joinder of the conspiracy charge, Mr. Embry argued to the state appellate courts, that, had he been tried separately on the conspiracy charge, his codefendant Bryant Morgan would have been able to testify in his defense. He relied on an affidavit Mr. Morgan prepared stating that he visited with Mr. Embry at the nightclub where the crimes occurred, but that they never discussed harming the attempted murder victim. Mr. Embry does not appear to pursue this argument in his federal habeas petition. But the Court notes that, as the state appellate court found, even if Mr. Morgan would have been willing to so testify at the time of trial (and his declaration does not assert that he would have), the conspiracy conviction was based on multiple pieces of evidence establishing a strong circumstantial case, as discussed in more detail *infra* at Section IV. Thus, even if Mr. Embry had raised this argument, it does not appear the joinder had "a substantial and injurious effect or influence in determining the jury's verdict" or that the state appellate court's rejection of Mr. Embry's joinder claim was contrary to or an unreasonable application of clearly established federal law, or an unreasonable determination of the facts. *Davis*, 384 F.3d at 638 (quoting *Sandoval,* 241 F.3d at 772).

(emphasis in original). "*Jackson* leaves [the trier of fact] broad discretion in deciding

what inferences to draw from the evidence presented at trial, requiring only that jurors

'draw reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson*,

132 S. Ct. 2060, 2064 (2012) (*quoting Jackson*, 443 U.S. at 319). The trier of fact is

entitled to believe the State's evidence and to disbelieve the defense's evidence.

*Wright v. West,* 505 U.S. 277, 296 (1992).

The *Jackson* inquiry focuses not on whether the trier of fact made the *correct*

guilt or innocence determination but on whether it made a *rational* decision to convict or

acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original); *see also*

*Coleman v. Johnson*, 132 S. Ct. at 2065 ("[T]he only question under *Jackson* is whether

[the jury's] finding was so insupportable as to fall below the threshold of bare

rationality."). "A federal court may not overturn a state court decision rejecting a

sufficiency of the evidence challenge simply because the federal court disagrees with

the state court. The federal court may do so only if the state court decision was

'objectively unreasonable.'" *Cavazos v. Smith,* 565 U.S. 1, 2 (2011) (quoting *Renico v.*

*Lett*, 559 U.S. 766, 773 (2010)).

The Washington Court of Appeals considered Mr. Embry's insufficient evidence

claim in the context of his direct appeal and, after reviewing the record, concluded that,

viewing the evidence in the light most favorable to the State, a reasonable trier of fact

could have convicted Mr. Embry of conspiracy to commit first-degree murder on the

basis of the evidence presented at trial. Specifically, the appellate court found:

> We review insufficient evidence claims for whether, when
> viewing the evidence in the light most favorable to the State, any
> rational trier of fact could have found the essential elements of the
> charged crime beyond a reasonable doubt. *Yarbrough,* 151
> Wash.App. at 96, 210 P.3d 1029. Sufficiency challenges admit the

truth of the State's evidence and all reasonable inferences drawn from it. *State v. Theroff,* 25 Wash.App. 590, 593, 608 P.2d 1254, *aff'd,* 95 Wash.2d 385, 622 P.2d 1240 (1980). In determining the sufficiency of the evidence, we do not consider circumstantial evidence any less reliable than direct evidence. *State v. Delmarter,* 94 Wash.2d 634, 638, 618 P.2d 99 (1980).

The trier of fact makes determinations of credibility, and we will not review those determinations on appeal. *State v. Thomas,* 150 Wash.2d 821, 874, 83 P.3d 970 (2004). We also defer to the trier of fact on issues of conflicting testimony, witness credibility, and the persuasiveness of evidence. *State v. Walton,* 64 Wash.App. 410, 415–16, 824 P.2d 533, *review denied,* 119 Wash.2d 1011, 833 P.2d 386 (1992). […]

The jury convicted Embry of conspiracy to commit first degree murder. Washington's conspiracy statute states:

A person is guilty of criminal conspiracy when, with intent that conduct constituting a crime be performed, he or she agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them takes a substantial step in pursuance of such agreement.

RCW 9A.28.040(1). The State need not show a formal agreement to commit the crime. *State v. Barnes,* 85 Wash.App. 638, 664, 932 P.2d 669, *review denied,* 133 Wash.2d 1021, 948 P.2d 389 (1997). Conspiracy may be proved by the declarations, acts, and conduct of the parties, or by a concert of action. *Barnes,* 85 Wash.App. at 664, 932 P.2d 669. The State can demonstrate concert of action by showing the parties working understandingly, with a single design for the accomplishment of a common purpose. *State v. Casarez–Gastelum,* 48 Wash.App. 112, 116, 738 P.2d 303 (1987) (quoting *Marino v. United States,* 91 F.2d 691, 694 (9th Cir.1937), *cert. denied,* 302 U.S. 764, 58 S.Ct. 410, 82 L.Ed. 593 (1938)). And, "[a] person is guilty of murder in the first degree when: [w]ith a premeditated intent to cause the. death of another person, he or she causes the death of such person or of a third person." RCW 9A.32.030(1)(a).

Embry argues that the only evidence establishing any agreement between Embry and Parker and Morgan was the security video footage. He contends that, because the gang evidence was invalid, the State presented no other evidence that the defendants agreed to commit any crime. Embry's logic is flawed.

Sufficient circumstantial evidence supports Embry's conspiracy conviction. We previously held herein that the evidence of gang affiliation was properly admitted. The photographs of Embry, Parker, and Morgan together, flashing gang signs, coupled with Detective Ringer's testimony that the Hilltop Crips and Hoover Crips are on friendly terms, support this charge. Clark and Hudson testified that Clark and Parker shared an animosity dating back to the New Year's morning fight. The video showed Embry interacting with Parker and Morgan at

1
2
3
4
5
6

McCabe's before the shooting and watching Clark walk around the bar. The video also showed Embry, Parker, and Morgan talking outside McCabe's and Embry and Morgan running off toward Clark's car just moments before Clark and Crimmins walked in the same direction. The video then showed Parker trailing them. Both Clark and Crimmins testified that they saw Embry confront and shoot Clark. Hudson testified that moments after the shooting, he saw Morgan running from the shooting scene; and, Hernandez testified that he saw Embry, with a gun, running from the scene with another individual. Following the shooting, Crimmins and Clark witnessed Embry get into Parker's rental car. Walker testified to seeing men matching Embry and Morgan's descriptions load into Parker's awaiting rental car shortly after the shooting.

7
8
9
10
11
12
13
14
15
16
17
18

Embry's challenge admits the truth of the State's evidence and all reasonable inferences drawn from it. *See Theroff,* 25 Wash.App. at 593, 608 P.2d 1254. During closing, the State outlined some inferences from the evidence. It argued that Parker, a Hilltop Crip, still harbored ill feelings over the New Year's morning fight involving Clark, a YGC. One may infer that Parker recruited members from an ally gang with whom Clark was unacquainted, Embry and Morgan, to retaliate for the perceived disrespect Clark showed Parker on New Year's morning. So, the defendants arrived at McCabe's for hip-hop night. They entered McCabe's unarmed because security would have confiscated any weapon upon entry. The State reasoned that, after the defendants exited McCabe's, Morgan approached Parker, who provided Morgan the car keys so Morgan and Embry could retrieve the gun. Embry and Morgan then ran toward the shooting scene ahead of Crimmins and Clark, presumably to get the gun and shoot Clark. Parker followed Embry and Morgan, as well as Clark and Crimmins, in the same direction, to start the car and be ready to leave immediately following the shooting. The State reasoned that the defendants then dropped off Parker on State Route 512 on their way north and dumped the car in the Green River to keep law enforcement from linking it to the shooting. Viewing the evidence in a light most favorable to the State, a rational trier of fact could have found the essential elements to prove that Embry conspired with others to commit first degree murder.

19    Dkt. 52, Ex. 3 at 2-9, Published Opinion, *State v. Embry*, Court of Appeals Cause No.

20    40984-4-II (*State v. Embry*, 171 Wash. App. 714, 724–26, 287 P.3d 648, 654–55

21    (2012)). The Washington Supreme Court denied review without comment on direct

22    appeal. Dkt. 52, Ex. 8, Order, *State v. Embry*, Supreme Court Cause No. 88162-6.

23    Mr. Embry argues the trial court improperly admitted the evidence of gang

24    affiliation at trial. Dkt. 9, 9-2. He argues that without this evidence insufficient evidence

25

REPORT AND RECOMMENDATION - 36

1    supported the conspiracy charge. However, as discussed above, the state appellate

2    court's rejection of Mr. Embry's challenge to the admission of gang affiliation evidence

3    was not contrary to or an unreasonable application of clearly established federal law, as

4    determined by the Supreme Court. Mr. Embry argues that several witnesses lied during

5    their testimony. Dkt. 9-2, at 19-21. He contends Mr. Hudson lied in stating that he saw

6    Ms. Crimmins following Mr. Morgan in a red sweater after the shots and that Mr.

7    Hernandez lied in testifying that he saw Mr. Embry running away from the body in the

8    street with a gun in his hand. *Id.* He also contends Mr. Walker lied in stating he saw

9    someone walking away and getting into a car with a black hoodie on. *Id.* He implies that

10   because the police officers who arrived at the scene shortly after the shooting indicated

11   the area was not well lit and that they did not see anyone fleeing the scene that these

12   other witnesses were lying. *Id.* Mr. Embry also contends Mr. Clark was mistaken in

13   identifying him as the shooter and points to the fact that Mr. Clark indicated the shooter

14   had white beads in his hair and he had not had white beads in his hair that night. *Id.*

15       Mr. Embry's disagreement with the persuasiveness of the witnesses' testimony

16   does not establish the evidence was insufficient to support his conviction. The jury could

17   reasonably have credited Mr. Clark's testimony identifying Mr. Embry as the shooter as

18   well as the testimony that Ms. Crimmins identified the distinctive jacket Mr. Embry wore

19   as that belonging to the shooter. The jury likewise could reasonably have credited the

20   other eyewitness testimony of Mr. Hudson, Mr. Hernandez, and Mr. Walker despite the

21   responding officers' testimony that the area was generally not well lit and that they

22   themselves did not notice anyone fleeing the scene.

23

24

25

REPORT AND RECOMMENDATION - 37

Mr. Embry also argues there was insufficient evidence to support his conviction because there was "no audio of security video recovered from the night club and no other evidence to establish what, if anything, the defendants talked or agreed about." Dkt. 9, at 12. But the record shows there was sufficient circumstantial evidence to support Mr. Embry's conspiracy conviction. Specifically, there were photographs introduced of Mr. Embry, Mr. Morgan, and Mr. Parker, together as well as Detective Ringer's testimony that the Hilltop Crips and Hoover Crips were on friendly terms. Dkt. 55, Ex. 31, VRP, Volume 7, at 1263-1264, 1302-1304. There was evidence in the record that Mr. Embry admitted to being a member of the 74th Street Hoover Crips as well as evidence that Mr. Morgan was a member of the 52 ("Five Deuce") Hoover Crips, Mr. Parker was a member of the Hilltop Crips, and that Mr. Clark had been a member of the Young Gangster Crips (YGCs). Dkt. 55, Ex. 31, VRP, Volume 7 at 1243, 1259-1264; Ex. 30, VRP, Volume 4, at 581, 585; Dkt. 56, Ex. 34, VRP, Volume 6, at 905-907; Ex. 34, VRP, Volume 6, at 906-907. There was testimony from Mr. Clark as well as Mr. Hudson that there was ongoing animosity between Mr. Clark and Mr. Parker from their New Year's morning fight. Dkt. 56, Ex. 33, VRP, Volume 5 at 1263-1264; Ex. 34, VRP, Volume 6, at 908; Ex. 30, VRP, Volume 4, at 602. Mr. Embry testified that he did not know Mr. Clark before the shooting and Detective Ringer testified that Mr. Embry had indicated he had "no beef" with Mr. Clark. Dkt. 55, Ex. 31, Volume 7, at 1272; Dkt. 57, Ex. 37, VRP, Volume 9, at 1549. Mr. Clark also testified that he did not know Mr. Embry before the shooting.  Dkt. 55, Ex. 30, VRP, Volume 4, at 553-554.

There was also video evidence introduced of the night of the shooting at McCabe's which showed: Mr. Embry interacting with Mr. Parker and Mr. Morgan at McCabe's before

1    the shooting and apparently watching or looking in the direction of Mr. Clark; Mr. Embry,

2    Mr. Parker, and Mr. Morgan talking outside of McCabe's; Mr. Embry and Mr. Morgan

3    jogging off toward Mr. Clark's car just before Mr. Clark and Ms. Crimmins walked in the

4    same direction, and Mr. Parker then walking in the same general direction. Dkt. 55, Ex.

5    32, VRP, Volume 8, at 1338-1374. There was evidence Ms. Crimmins indicated the

6    shooter was wearing a jacket with a distinctive pattern and that she identified Mr. Embry's

7    jacket as belonging to the person who shot Mr. Clark. Dkt. 55, Ex. 31, VRP, Volume 7, at

8    1247, 1272. Dkt. 54, Ex. 29, Volume 3, at 430, 438, 456-459. Mr. Clark also identified Mr.

9    Embry as the person who shot him both from a photo array in the hospital shortly after

10   the shooting as well as in court during trial. Dkt. 55, Ex. 30, VRP, Volume 4, at 553-554,

11   621-622. There was testimony from Mr. Hudson that moments after the shooting, he saw

12   someone in a red hoody sweatshirt running down an alley or street away from the

13   shooting scene and that he had also seen Mr. Morgan wearing a red sweatshirt in

14   McCabe's earlier in the evening. Dkt. 56, Ex. 34, VRP, Volume 6, at 911-913, 931. There

15   was also testimony from Mr. Hernandez that he saw Mr. Embry running from the scene

16   with a gun in his hand and that it looked like he was running with another individual. Dkt.

17   56, Ex. 34, VRP, Volume 6, at 974-976.

18          Following the shooting, Ms. Crimmins testified she saw the shooter get into the

19   driver's side backseat of a car and that she followed the shooter to get the license plate

20   of the car and relayed the information to police. Dkt. 55, Ex. 31, VRP, Volume 7, at 1247,

21   1272. Telon Walker, Mr. Clark's cousin who was also at McCabes on the night of the

22   shooting, testified that immediately after the shooting he saw a man with a dark hoody

23   walking away from the scene and get into the driver's side backseat of a car and another

24

25

man with a red hoody get into the passenger's side backseat of the same car. Dkt. 56, Ex. 33, VRP, Volume 5, at 768-772. Mr. Walker later indicated to police that the clothing he saw on Mr. Morgan and Mr. Embry matched that of the clothing he saw on the two individuals entering the car. Dkt. 55, Ex. 31, Volume 7, at 1169.

There is evidence Ms. Crimmins described the car to police initially as a white Caprice but then, once she had calmed down, clarified it was a silver Ford escort type vehicle and provided a license plate number of 698-YNT. Dkt. 54, Ex. 29, VRP Volume 3, at 375. The record reflects Mr. Walker also described the car as a four-door Impala, grayish, light mauve or tan. Dkt. 56, Ex. 33, VRP, Volume 5, at 768-772. There was evidence that a car matching the description of the car seen leaving the scene of the shooting with a license plate of 648-YNT was found several days after the shooting in the Green River. Dkt. 56 Ex. 34, Volume 6, at 1119; Dkt. 56, Ex. 33, VRP, Volume 5, Dkt. 853-854. Evidence was presented that a rental agreement was found in the car showing it had been rented to Mr. Parker and that Mr. Parker had reported the rental car stolen just a few hours after the shooting. Dkt. 56, Ex. 33, VRP, Volume 5, at 853-854; Dkt. 55, Ex. 31, VRP Volume 7, at 1139.

The jury could reasonably conclude, based upon the evidence, that Mr. Embry shot Mr. Clark with the intent to kill him and that he did so because he had entered into an agreement with Mr. Morgan and Mr. Parker to shoot Mr. Clark in retaliation for the incident between Mr. Clark and Mr. Parker on New Year's.

It is apparent Mr. Embry believes the jury erred in finding him guilty based on the evidence presented at trial, and that the state courts erred in failing to perceive that the evidence did not support the conclusion that Mr. Embry committed the charged crime.

1    However, a reviewing court must be mindful of "the deference owed to the trier of fact

2    and, correspondingly, the sharply limited nature of constitutional sufficiency review."

3    *Wright v. West*, 505 U.S. 277, 296-97 (1992).  As the Supreme Court emphasized in

4    *West*:

5         We said [in *Jackson*] that "*all of the evidence* is to be considered in the light most
          favorable to the prosecution" . . . that the prosecution need not affirmatively "rule
6         out every hypothesis except that of guilt" . . . and that a reviewing court "faced
          with a record of historical facts that supports conflicting inferences must presume
7         – even if it does not affirmatively appear in the record – that the trier of fact
          resolved any such conflicts in favor of the prosecution, and must defer to that
8         resolution."

9    *West*, 505 U.S. at 296-97 (quoting *Jackson*, 443 U.S. at 326) (citations omitted,

10   emphasis in original).

11        Washington State courts reasonably applied federal constitutional law, and

12   reasonably considered the facts, and rejected Mr. Embry's challenge to the sufficiency of

13   the evidence as there was ample evidence in the record to support Mr. Embry's

14   conviction. Mr. Embry's federal habeas petition should therefore be denied with respect

15   to this claim as well.

16   V.   Ground Four: Firearm Enhancement

17        Mr. Embry claims the trial court erred in sentencing him for a firearm

18   enhancement which was not found by the jury. Dkt. 9, at 14.

19        Respondent argues that Mr. Embry's claim is moot. Dkt. 51. Specifically,

20   respondent notes that Mr. Embry raised this claim in his first PRP which he filed in

21   2014, around the same time he filed this federal habeas petition. Dkt. 9; Dkt. 51; Dkt.

22   52, Ex. 10. Included as an attachment to the PRP is an email from the prosecutor

23   agreeing the enhancement on the judgment and sentence for the conspiracy conviction

24   was in error and indicating he would do a corrected judgment and sentence. Dkt. 52,

25

1  Ex. 10, Ex. B (email from DPA Greer). In response to the PRP, the prosecutor

2  acknowledged the scrivener's error in the judgment and sentence and confirmed that

3  the error would be corrected. Dkt. 53, Ex. 11. In the order dismissing Mr. Embry's PRP,

4  the appellate courts noted that the error had already been corrected and that no further

5  relief could be provided and, additionally, that the error did not affect Mr. Embry's

6  sentencing range. Dkt. 53, Ex. 13, at 3. The record reflects the sentencing court entered

7  an order correcting the error in Mr. Embry's judgment and sentence on March 3, 2015.

8  Dkt. 52, Ex. 2.

9          The Court notes that Mr. Embry filed his federal habeas petition prior to the

10  correction of the scrivener's error and, therefore, his petition does not address the

11  corrected judgment and sentence. Mr. Embry also did not file an amended petition,

12  despite being given the opportunity and many extensions of time to do so, nor did he file

13  a response to respondent's answer.

14          A habeas petition is moot where a petitioner's claim for relief cannot be

15  redressed by a favorable decision of the court issuing a writ of habeas corpus. *Burnett*

16  *v. Lampert,* 432 F.3d 996, 1000–01 (9th Cir. 2005). The record shows the sentencing

17  court corrected the error in the judgment and sentence Mr. Embry was challenging in

18  2015 and that, therefore, Mr. Embry's claim is moot. Mr. Embry's federal habeas petition

19  should therefore be denied with respect to this claim as well.

20                          <u>CERTIFICATE OF APPEALABILITY (COA)</u>

21          If the Court adopts the undersigned's Report and Recommendation, it must

22  determine whether a COA should issue. Rule 11(a), Rules Governing Section 2254

23  Cases in the United States District Courts ("The district court must issue or deny a

24  certificate of appealability when it enters a final order adverse to the applicant."). A COA

25

REPORT AND RECOMMENDATION - 42

may be issued only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2)-(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

The undersigned recommends that Mr. Embry not be issued a COA. No jurist of reason could disagree with the above evaluation of his constitutional claims or conclude that the issues presented deserve encouragement to proceed further. Mr. Embry should address whether a COA should issue in his written objections, if any, to this Report and Recommendation.

<u>CONCLUSION</u>

Based on the foregoing discussion, the undersigned recommends that the Court dismiss the petition with prejudice and deny issuance of a COA.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP) 72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on **January 22, 2021**, as noted in the caption.

Dated this 29th day of December, 2020.

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 43